# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| DEBORAH SMITH, | ) | |
| 11530 Holiday Drive Apt 2010 | ) | |
| Kansas City, MO 64134 | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| v. | ) | |
| | ) | |
| ADVENT HEALTH | ) | |
| SYSTEMS/SUNBELT INC, | ) | |
| Serve Registered Agent: | ) | |
| The Corporation Company, Inc. | ) | |
| 112 SW 7th Street Suite 3C, | ) | |
| Topeka, KS 66603 | ) | |
| | ) | |
| Defendants. | ) | |

## **COMPLAINT**

COMES NOW Plaintiff Deborah Smith ("Plaintiff") by and through her counsel, for her Complaint against Defendant Advent Health-Shawnee Mission ("Advent Health") hereby states and alleges as follows:

## **The Plaintiff**

1. Plaintiff resides in Jackson County, Missouri.

2. Plaintiff was hired by Defendant Advent Health on or about November 11, 2019 as a floating phlebotomist.

3. Plaintiff worked for Defendant Advent Health from November 11, 2019 until she was constructively discharged on May 14, 2021 for unlawful and discriminatory reasons.

4. Plaintiff is a minority (African American) female.

5. From approximately June 1, 2020 through the date that she was constructively discharged by Defendant Advent Health, Plaintiff was subjected to harassment, hostile work

environment, discrimination, and retaliation on the basis of her race and sex by Defendant Advent Health and its employees.

6. Plaintiff was harassed, intimidated, and retaliated against by Defendant Advent Health for refusing to draw blood from patients located on Advent Health's COVID floor.

7. Additionally, Plaintiff was threated and repeatedly harassed by her white male supervisor. Defendant Advent Health did not properly respond to her complaints and Defendant Advent Health did not respond to her complaint in the same manner as they respond to complaints lodged by similarly situated employees of different races and sexes.

8. White employees who complained of threats of harassment by back employees were not required to work the accused, in most instances the accused was removed from the work area and a formal investigation was conducted.

9. Plaintiff submitted her application for a position with Defendant Advent Health that she met the minimum requirements to perform. Without explanation, her application was closed, and she was directed to apply for another position.

10. Subsequently, Plaintiff was informed by Advent Health's human resources department ("HR") that position was given to a more qualified.

11. The position was given to a white person with less experience than Plaintiff.

12. Plaintiff complained to Defendant Advent Health regarding harassment, discrimination, retaliation, and hostile work environment that she faced because of her race and sex but her complaints were not properly investigated by Defendant Advent Health.

## The Defendant

13. Defendant Advent Health is a Florida corporation headquartered in Altamonte Springs, Florida with a location at 9100 W 74th, Street Merriam, KC 66204.

14. Defendant Advent Health employed at least fifty (50) persons for at least twenty (20) weeks in the year preceding Plaintiff's constructive discharge and all times during Plaintiff's employment with Defendant Advent Health.

15. At all times relevant to this Complaint, Defendant Advent Health was Plaintiff's employer.

16. Defendant Advent Health is an employer within the meaning of 42 U.S.C.A § 1981 ("Section 1981"), Title VII of the Civil Rights Act of 1964, and the Kansas Act Against Discrimination Title K.S.A. 44-1009 ("KAAD").

17. Defendant Advent Health failed and refused to properly train its managers, supervisors, and employees regarding civil rights laws.

18. Defendant Advent Health failed and refused to conduct any proper investigation into Plaintiff's complaints and failed and/or refused to stop illegal behavior.

19. Defendant Advent Health is liable for the discriminatory, harassing, hostile actions and retaliatory actions by its employees against Plaintiff.

## Jurisdiction and Venue

20. This lawsuit is brought under Section 1981 and Title VII for the discriminatory, harassing, retaliatory, and hostile behavior of Defendant Advent Health and its employees. This lawsuit is also brought to address Defendant Advent Health's failure to investigate, address, and eliminate the illegal harassing, discriminatory, retaliatory, and hostile work environment against Plaintiff.

21. Original jurisdiction lies herein pursuant to the statutes listed in paragraph 18 above. Additionally, jurisdiction is proper pursuant to 28 U.S.C.A. §1331. Further there is

complete diversity in this case and the amount in controversy exceeds $75,000 making jurisdiction also proper pursuant to 28 U.S.C.A. §1332.

22. Venue is proper in this court pursuant to 28 U.S.C. §1391(b) and (c) as Defendant Advent Health does business in this district and a substantial part of the unlawful conduct giving rise to the claims occurred in this district.

23. All conditions precedent to jurisdiction have occurred and/or been complied with.

24. Plaintiff filed her initial Charge of Discrimination in a timely manner on or about August 16, 2020 alleging that she was discriminated against based on race, color, disability, and retaliation with the Kansas Human Rights Commission ("KHRC") and the Equal Employment Opportunity Commission ("EEOC"). The matter was assigned EEOC Charge Number 563-2020-02809. A copy of the Charge is attached hereto as Exhibit A.

25. The EEOC issued Plaintiff her Right to Sue letter dated February 26, 2021 from the EEOC and this lawsuit is filed within ninety (90) days of the date on the EEOC letter. A copy of the Right to Sue letter is attached hereto as Exhibit B.

## General Allegations

26. Plaintiff began working for Defendant Advent Health on November 11, 2019 as a floating phlebotomist.

27. During her employment with Defendant Advent Health, she performed her job duties competently and professionally.

28. March 2020, Plaintiff, and other phlebotomists employed by Defendant were directed to inform Defendant's Employee Health Department if they had any underlying conditions that prevented them from drawing blood from patients located on Defendant's COVID Floor.

29. Plaintiff informed Defendant of her underlying health conditions and provided supporting documentation. Plaintiff was not required to draw blood from patients located on the COVID floor.

30. June 2020, Plaintiff was informed that there were not enough Phlebotomists available to work with patients on Defendant's Covid floors and that all phlebotomists would have to resubmit their request to not work with COVID patients directly to Defendant's human resources department ("HR").

31. Plaintiff informed HR of her underlying health condition and provided supporting documentation from her primary physician and lung specialist.

32. HR did not grant Plaintiff's request to be excused from working with patients located on the COVID floor.

33. Plaintiff contacted her supervisor because she was concerned about working with COVID patients, but her supervisor did not respond to her inquiries.

34. HR agreed to meet with Plaintiff to discuss her request for an accommodation.

35. Plaintiff contacted HR on multiple occasions in an attempt to calendar a meeting, but HR ignored Plaintiff's correspondence.

36. After submitting her documents to HR, Plaintiff was directed to draw blood from COVID patients on multiple occasions.

37. Plaintiff refused to work on Defendant's COVID floor out of fear for her safety. As a result, Plaintiff was harassed by Defendant's employees and supervisors.

38. Plaintiff believes that similarly situated white employees were treated differently. White employees that provided information related to underlying health conditions were not ignored by HR nor directed to draw blood from patients on Defendant's COVID floor.

39. August 2020, Plaintiff recognized that her newly hired supervisor was a former coworker that harassed her to the point of resigning from her former employment.

40. Plaintiff informed her current supervisors of this prior negative experience.

41. On August 6, 2020, Charlie Hibbard, Plaintiff's new supervisor threated her by telling her that he was trying to leave his gun at home. Plaintiff asked him to repeat himself and he repeated the same statement. Hibbard made these comments after displaying frustration with how Plaintiff performed her job duties.

42. Plaintiff informed HR and her managers that she had been threated by Hibbard.

43. Next, Plaintiff left her work area to go outside because she was crying and terrified of Hibbard.

44. HR did not properly investigate Plaintiff's claim or place Hibbard on administrative leave.

45. Defendant forced Plaintiff to return to work and report to the same supervisor.

46. Plaintiff requested that a formal investigation be conducted and that she receives the outcome of the investigation in writing. Defendant ignored Plaintiff's request.

47. Hibbard continued bullying and harassing Plaintiff until she transferred to a night position to get away from Hibbard.

48. Plaintiff was prescribed medication to deal the anxiety and depression that resulted from this incident.

49. Upon information and belief, Plaintiff does not believe that Hibbard was disciplined for his actions.

50. Plaintiff is aware of a complaint made by a similarly situated white male against a black female and Defendant responded by removing the black from the work area immediately, the properly investigated the complaint and issues discipline.

51. Plaintiff was extremely unhappy in the night position as she was not about to see her family, she could not sleep well during the day and she felt like she had been punished for complaining.

52. On February 17, 2021, Plaintiff applied for an Outpatient Phlebotomy Coordinator position with Advent Health. This position would have allowed her to go back working during the day.

53. Plaintiff met all the minimum qualifications for the position and some of the preferred qualifications.

54. Plaintiff was not allowed to interview for the position prior to being informed that her application was closed and that she should apply for another position.

55. Plaintiff contacted HR and was informed that the position was given to a more qualified candidate.

56. Plaintiff complained to Defendant that not being allowed to interview for the position was retaliation. Plaintiff requested that her complaint be investigated but Defendant ignored her request.

57. The position Plaintiff applied for was filled by a white applicant with seemingly less experience than Plaintiff.

58. Plaintiff was constructively discharged from her employment with Defendant on May 14, 2021 as a result of continued harassment, discrimination, and retaliation.

## COUNT I
### RACE DISCRIMINATION, HARASSMENT AND RETALIATION IN VIOLATION OF TITLE VII & SECTION 1981

59. Ms. Smith incorporates by reference every allegation made herein.

60. Ms. Smith is African American.

61. Ms. Smith was treated differently because of race and sex.

62. Ms. Smith complained to Defendant that she was being harassment and discriminated against because of her race and sex.

63. The Defendant failed to investigate Ms. Smith's complaints of discrimination.

64. The conduct alleged herein adversely affected the terms and conditions and privileges of Ms. Smith's employment.

65. As a direct and proximate cause of the actions and conduct set forth herein, Ms. Smith suffers and will continue to suffer damages, emotional distress, and inconvenience.

66. Ms. Smith engaged in protected activity under Title VII and 1981, including but limited to opposing discriminatory conduct by the Defendant.

67. Ms. Smith suffered adverse employment actions such as but not limited to being isolated, bullied, harassed, ignored, denied opportunities and constructive discharge by the Defendant.

68. There is a causal connection between Ms. Smith's protected activity and the adverse employment actions.

WHEREFORE, Ms. Smith prays for judgment against Defendant on count I of her complaint, for a finding that she has been subjected to unlawful race and sex discrimination, harassment and retaliation in violation Title VII of the Civil Rights Act of 1964 and Section 1981; for compensatory damages, including monetary losses, emotional pain and suffering, loss of enjoyment of life and other non-monetary losses; punitive damages, equitable relief, back pay and

front pay, including the value of fringe benefits, costs expended, reasonable attorneys' fees and expert fees and expenses, pre-judgment and post judgment interest, and for such other and further relief the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues triable by jury.

                Respectfully submitted,

                WYRSCH HOBBS MIRAKIAN, P.C.

By:       */s/ Stephen R. Williams*
      Stephen R. Williams      Fed #78956
      1200 Main Street, Suite 2110
      Kansas City, MO 64105
      816-221-0080
      Fax: 816-221-3280
      sfoye@whmlaw.net
      ATTORNEYS FOR PLAINTIFF